# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CHARMAGNE C. LAPOINT, <br><br> Defendant. | No. CR 13-3045-MWB-1 <br><br> **MEMORANDUM OPINION AND ORDER REGARDING PARTIES' RULE 11(c)(1)(C) PLEA AGREEMENT** |

_____

**TABLE OF CONTENTS**

*I.     INTRODUCTION.................................................................2*

*II.    ANALYSIS ........................................................................3*
*       A.   Rule 11(c)(1)(C) Standards ........................................3*
*       B.   Discussion.............................................................4*

*III.   CONCLUSION ..................................................................9*

This case is before me following defendant Charmagne LaPoint's (LaPoint's) initial sentencing hearing, which occurred on March 26, 2014. LaPoint entered into an agreement with the Government, under Federal Rule of Criminal Procedure 11(c)(1)(C), in which she pleaded guilty to one count of mail theft by a Postal Service employee, in violation of 18 U.S.C. § 1709. The parties agreed to a sentence of probation, plus restitution. At LaPoint's sentencing hearing, I expressed reservations about accepting the plea agreement because a sentence of probation—the low end of LaPoint's Guidelines range—fails to account for the non-monetary harm caused by her crime. I asked the parties to brief whether I could reject the plea agreement based on a policy disagreement with the theft guideline. After reviewing the parties' briefs, I

reject their plea agreement, but for reasons other than a policy disagreement with the theft guideline.

## I. INTRODUCTION

LaPoint pleaded guilty to one count of mail theft by a Postal Service employee, in violation of 18 U.S.C. § 1709, as part of a Rule 11(c)(1)(C) plea agreement. In the agreement, LaPoint stipulated to stealing approximately 40 pieces of mail in 2013 while working as a Post Master Relief in Wesley, Iowa. She targeted mail that appeared to contain greeting cards and would steal any cash enclosed with the cards. LaPoint would then rip up the cards and throw them away at the post office or her home. In addition to cash, LaPoint stole six gift cards and a laptop computer from the mail. All told, LaPoint admitted to stealing money and property worth $1,294.95 and agreed to pay that amount in restitution.

The plea agreement does not tell the whole story, however. A statement from one of LaPoint's victims, an intended card recipient, reveals significant non-monetary harm caused by LaPoint's crime. The victim never received sympathy cards regarding her father, and could not thank those who sent their condolences, because LaPoint had torn the cards up. Because of LaPoint, the victim lost trust in the Postal Service, stopped mailing packages to her son in the military, and began traveling to neighboring cities to drop off her mail. Moreover, while the record contains only one victim impact statement, the record supports the fact that LaPoint deprived other victims—the other intended card recipients—of the support, condolences, and congratulations offered in the myriad types of greeting cards that LaPoint destroyed.

In light of these facts, I must determine whether to accept or reject the parties' Rule 11(c)(1)(C) plea agreement.

## II. ANALYSIS

### A. Rule 11(c)(1)(C) Standards

Federal Rule of Criminal Procedure 11(c)(1)(C) provides that

> [a]n attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement . . . specify[ing] that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

"[T]he court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A). A Rule 11(c)(1)(C) plea agreement is binding on the court only if the court accepts it. *United States v. Scurlark*, 560 F.3d 839, 842 (8th Cir. 2009). "Courts are not obligated to accept plea agreements and have discretion to reject those which are deemed . . . unfair." *United States v. Kling*, 516 F.3d 702, 704 (8th Cir. 2008). While "[a] sentence imposed under a Rule 11(c)(1)(C) plea arises directly from the agreement itself, not from the Guidelines, . . . the court can and should consult the Guidelines in deciding whether to accept the plea." *United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005) (cited favorably in *Scurlark*, 560 F.3d at 842). "Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion," which includes the court's obligation to examine the sentence's sufficiency in light of 18 U.S.C. § 3553(a). *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011).

Thus, in determining whether to accept LaPoint's Rule 11(c)(1)(C) plea agreement, I must examine whether the agreed-upon sentence—probation—is fair in light of the Guidelines and § 3553(a).

### B. Discussion

The sentencing guideline related to theft—U.S.S.G. § 2B1.1—drives LaPoint's sentencing range. Under § 2B1.1(a)(2), LaPoint's base offense level is 6. She received a two-level enhancement for having between 10 and 50 victims, § 2B1.1(b)(2)(A), another two-level enhancement for abusing a position of public trust, § 3B1.3, and a two-level reduction for accepting responsibility, § 3E1.1(a), yielding a total offense level of 8. Because LaPoint's criminal history score is 0, her Guidelines range is 0 to 6 months. LaPoint's Rule 11(c)(1)(C) plea agreement to probation, therefore, falls at the low end of her Guidelines range.

But, the theft guideline suffers from a problem that plagues other guidelines: it does not fairly measure defendants' culpability, as least when applied to defendants, like LaPoint, whose crimes cause significant non-monetary harm. Under § 2B1.1, a defendant's offense level is predominantly a function of the monetary loss caused by the defendant's theft. Specifically, the schedule in § 2B1.1(b)(1) provides for offense-level enhancements of up to 30 points, depending solely on the monetary loss caused by a defendant. In a mine-run theft case, this monetary loss schedule will, in all likelihood, be the only significant metric for a defendant's offense conduct. Yet, monetary loss is often a poor proxy for culpability. While § 2B1.1 includes modest enhancements for some (very rare) non-monetary harms, *see, e.g.*, U.S.S.G. §§ 2B1.1(b)(3) (theft from another's person), 2B1.1(b)(5) (theft of property from a national cemetery or veterans' memorial), it does not include any enhancements that capture non-monetary harm inflicted on most victims of theft. Thus, in cases like this one, § 2B1.1 does not adequately account for a defendant's blameworthiness.

4

The problem with pegging a defendant's offense level to monetary loss is that, in many cases, it misvalues the harm caused by a defendant's theft. This misvaluation is endemic to the Guidelines. *See, e.g.*, *United States v. Hayes*, 948 F. Supp. 2d 1009, 1028 (N.D. Iowa 2013) (stating a policy disagreement with methamphetamine quantity guidelines, which systemically overstate defendants' culpability). As for theft cases, courts have identified a number of situations in which § 2B1.1 produces sentencing ranges that are too high. These situations include at least four scenarios:

> The first is the "multiple causation" scenario, in which the amount of loss is determined to be the product of several sources (e.g., an economic downturn, a market collapse, or negligence by the victims), in addition to the defendant's conduct. [*United States v. Forchette*, 220 F. Supp. 2d 914, 924 (E.D. Wis. 2002)] (citing *United States v. Rostoff*, 53 F.3d 398, 406-08 (1st Cir. 1995); *United States v. Morris*, 80 F.3d 1151, 1172-74 (7th Cir. 1996); *United States v. Miller*, 962 F.2d 739, 744 (7th Cir. 1992); *United States v. Kopp*, 951 F.2d 521, 531 (3d Cir. 1991); *United States v. Carey*, 895 F.2d 318, 322 (7th Cir. 1990)).
>
> The second scenario, logically related to the first, is when the defendant plays a limited or inferior role in the scheme that bore little relationship to the amount of loss determined under the guideline. *Id.* at 925 (citing *United States v. Brennick*, 134 F.3d 10, 13 (1st Cir. 1998); *Morris*, 80 F.3d at 1172-74; *United States v. Broderson*, 67 F.3d 452, 459 (2d Cir. 1995); *United States v. Monaco*, 23 F.3d 793, 799 (3d Cir. 1994); *United States v. Stuart*, 22 F.3d 76, 82 (3d Cir. 1994); *United States v. Nachamie*, 121 F. Supp. 2d 285, 295-97 (S.D.N.Y. 2000), *aff'd*, 5 Fed. Appx. 95 (2d Cir. 2001); *United States v. Costello*, 16 F. Supp. 2d 36, 39-40 (D. Mass. 1998); *United States v. Jackson*, 798 F. Supp. 556, 557 (D. Minn. 1992)).
>
> The third situation occurs when the defendant's effort to remedy the wrong merits consideration, as, for example, where he makes extraordinary restitution or, in a fraudulent

> loan case, where he had sufficient unpledged assets to cover the loss. *Id.* (citing *United States v. Oligmueller*, 198 F.3d 669, 671-72 (8th Cir. 1999); *United States v. Bean*, 18 F.3d 1367, 1369 (7th Cir. 1994); *Carey*, 895 F.2d at 323).
>
> The first three scenarios will typically occur when the court is sentencing based on actual loss. The fourth arises when the court adopts a figure based largely or solely on intended loss. A departure in this situation is based on the so-called "economic reality" principle. In some cases, as where a defendant devises an ambitious scheme obviously doomed to fail and which causes little or no actual loss, it may be unfair to sentence the defendant based on the intended (but highly improbable) loss determination from the § 2B1.1 table; the intended loss bears no relation to "economic reality." *Id.* at 924-25; *see also* [*United States v. Stockheimer*, 157 F.3d 1082, 1089 (7th Cir. 1998)] (stating that the court should evaluate the "economic reality" of a scheme in considering a downward departure); [*United States v. Coffman*, 94 F.3d 330, 336-37 (7th Cir. 1996)] (stating that "the place for mitigation on the basis of a large discrepancy between intended and probable loss is, under the guidelines, in the decision whether to depart downward").

*United States v. Roen*, 279 F. Supp. 2d 986, 990-91 (E.D. Wis. 2003).

But, in other cases—like those involving substantial non-monetary harm—courts have noted that § 2B1.1 produces sentencing ranges that are too low. *See, e.g.*, *United States v. Adetiloye*, 716 F.3d 1030, 1038 (8th Cir. 2013) (affirming an upward departure where defendant's mail fraud "caused great non-monetary loss, requiring victims to spend hours reclaiming their identities and repairing their credit records"), *cert. denied*, No. 13-8874, 2014 WL 772232, at *1 (U.S. Mar. 31, 2014); *United States v. Nevels*, 160 F.3d 226, 230 (5th Cir. 1998) (noting that the district court permissibly granted an upward departure based on the non-monetary impact of the defendant stealing undelivered Social Security checks from a postal worker); *United States v. Emuagbonrie*, 192 F. App'x 274, 276 (5th Cir. 2006) (affirming an upward

6

departure where defendant's counterfeiting "risk[ed] [harming] the integrity of the United States Postal Service"). In fact, at least one district court has stated a policy disagreement with § 2B1.1 after finding that the theft guidelines failed to account for significant non-monetary harm caused by a defendant. *See United States v. Alexander*, 368 F. App'x 690, 692 (7th Cir. 2010) (affirming a district court's above-Guidelines sentence, based on a policy disagreement with § 2B1.1, where the defendant stole Hurricane Katrina relief funds).

This case falls into the latter category of the cases cited above—those in which § 2B1.1 underappreciates the defendant's culpability. Because the monetary loss involved in LaPoint's theft is less than $5,000, she received no dollar-value-related enhancement under § 2B1.1(b)(1). And, for the reasons discussed above, she received no enhancement related to the non-monetary injuries she caused by stealing and destroying cards for a variety of life's blessings and tragedies. Thus, under these circumstances, a sentence of probation—the lowest end of LaPoint's Guidelines range—is predicated on factors that do not incorporate the full extent of the harm caused in this case.

This observation is consistent with the application notes to § 2B1.1, which acknowledge that "[t]here may be cases in which the offense level determined under this guideline substantially understates the seriousness of the offense," such as where "[t]he offense caused or risked substantial non-monetary harm." U.S.S.G. § 2B1.1 application note 20(A)(ii). In cases involving substantial non-monetary harm, the theft guideline contemplates that "an upward departure may be warranted." *Id*. But, given that LaPoint's plea agreement provides for probation, the parties clearly did not factor in such an upward departure here. Because the parties did not factor in an upward departure, and because the theft guideline does not factor in the non-monetary harm

caused by LaPoint's theft, I find that the low end of the theft guideline fails to fairly measure LaPoint's culpability.

I recognize, as both parties did in their briefs, that I could reject LaPoint's plea agreement based on a policy disagreement with the theft guideline. But, because I have an independent obligation to assess LaPoint's plea agreement in light of the factors in 18 U.S.C. § 3553(a), I find that a policy disagreement with the theft guideline is unnecessary here. As I will discuss below, § 3553(a) allows me to consider the nature and circumstances of LaPoint's offense, which, in this case, include the non-monetary harm caused by her theft. One of § 3553(a)'s virtues is that it can account for what the Guidelines ignore. Because I can analyze the non-monetary harm in this case under § 3553(a), I need not engage in a policy disagreement with the theft guideline.

Turning to § 3553(a), I must ensure that a defendant's sentence is "sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." 18 U.S.C. § 3553(a). To comply with those purposes, a sentence must

> reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense; . . . afford adequate deterrence to criminal conduct; . . . protect the public from further crimes of the defendant; and . . . provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

*Id.* § 3553(a)(2). In determining whether a sentence is "sufficient, but not greater than necessary," I must consider, among other things, "the nature and circumstances of the offense . . . ." *Id.* § 3553(a)(1).

As I noted earlier, the nature and circumstances of LaPoint's offense reveal that her theft caused significant non-monetary harm. Because of LaPoint, approximately 40 people never received a variety of cards, some containing cash, intended for them, which presumably included supportive messages from loved ones and friends. One

8

intended sympathy card recipient never received condolences regarding her father and stopped sending mail to her son in the military. While the theft guideline places no value on this type of harm, I do. It is one thing to steal someone's money; it is another thing entirely to steal someone's emotional support in times of joy, celebration, grief, or danger. The latter is often far more injurious than the former. Yet, in my opinion, nothing about a sentence of probation adequately accounts for that non-monetary harm. I therefore reject LaPoint's Rule 11(c)(1)(C) plea agreement because it is unfair given the nature and circumstances of LaPoint's offense.

### III. CONCLUSION

For the reasons discussed above, I reject the parties' Rule 11(c)(1)(C) plea agreement to probation because it fails to fairly account for the non-monetary harm LaPoint caused. But, while I reject a sentence of probation, I would not necessarily reject a sentence elsewhere in the Guidelines range of 0 to 6 months.

**IT IS SO ORDERED**.

**DATED** this 1st day of May, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA